# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

RENARDO SIMS,

    Plaintiff,

v.

KEVIN MARLER; OFFICER DEITEMAN; OFFICER KELLS; and CAPTAIN EADY,

    Defendants.

CIVIL ACTION NO.: 6:18-cv-79

## **ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff brought this 42 U.S.C. § 1983 action while incarcerated at Jenkins Correctional Center in Millen, Georgia, to challenge certain conditions of his confinement. Doc. 1. Plaintiff also moved for entry of default against Defendants. Doc. 31. After the requisite frivolity review, I **RECOMMEND** the Court **DISMISS** Plaintiff's claims, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff *in forma pauperis* status on appeal. Moreover, I **DENY as moot** Plaintiff's Motion for Entry of Default.

## **BACKGROUND**[1]

On September 8, 2017, while walking back to his cell from the shower, Plaintiff—in handcuffs—slipped and fell in a puddle of water, hurting his left shoulder, elbow, wrist, and back. Doc. 1 at 5. Defendant Deiteman, Plaintiff's escort, "grabbed Plaintiff by the right arm to yank him off the ground." Id. at 5–6. Defendant Kells, who was also present, "grabbed

---

[1] During frivolity review, "[t]he complaint's factual allegations must be accepted as true." Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017).

Plaintiff by the left arm to help yank Plaintiff from the ground." Id. at 6. Plaintiff asserts he did not consent to being pulled up from the floor, and when he was yanked upward, his shoulder dislocated from its socket. Id. Defendant Eady witnessed the fall and instructed Defendants Deiteman and Kells to bring Plaintiff to a room to be seen by a nurse. Id. There, Plaintiff complained of shoulder pains and "begged" to be released from his handcuffs. Id. When Defendants uncuffed him, Plaintiff's shoulder "temporarily popped back into its socket." Id. While waiting for the nurse, Defendant Eady told Plaintiff, "Don't put nobody else in this, I run my shift and I take care of my shift. So if you want to be taken care of be quiet and let me handle this." Id. at 7. When the nurse arrived, she checked Plaintiff's blood pressure, then he returned to his cell. Id.

The next day, Plaintiff filed a medical request reporting pain in his left shoulder, elbow, wrist, and back due to the slip and fall from the night before. Id. at 8. Plaintiff was escorted to the medical ward to see Defendant Marler, a doctor, on September 14, 2017, who, after hearing about Plaintiff's incident and his pain, prescribed Plaintiff 600mg of Motrin to be taken twice daily and scheduled x-rays for the following week. Id. On September 21, Plaintiff received x-rays for his lower back. Id. Plaintiff asked about x-rays for his shoulder, elbow, upper back, and wrist, but the radiologist said the doctor only ordered lower lumbar x-rays. Id. Four days later, Plaintiff submitted a medical request due to "excruciating" pain in his elbow and wrist, and three days after that, Plaintiff filed a grievance reporting "insufficient medical treatment" and requesting x-rays for his shoulder and arm and chiropractic treatment. Id. at 9. Defendant Marler saw Plaintiff on October 16, 2017 and increased the dosage of his medication and prescribed him a back brace. Id. Still, Plaintiff requested additional treatment for his pain. Id. On November 1, 2017, Defendant Marler issued Plaintiff a wrist brace and a muscle relaxer and

assured him "the pain will go away, it's just sore; nothing to worry about." Id. at 10. Thereafter, Plaintiff was transferred to a different facility.

Plaintiff seeks compensatory damages in the amount of $100,000 and punitive damages in the amount of $20,000 against each Defendant in their individual capacities, jointly and severally. Id. at 11. Plaintiff also requests a jury trial and recovery of costs and any additional relief the Court deems proper.

On November 20, 2019, Plaintiff moved for entry of default against Defendants. Doc. 31. Plaintiff stated that "court files and the record herein show that the defendants were served by the United States Marshal with a copy of summons and a copy of the Plaintiff's Complaint on 18th of July, 2019." Id. Plaintiff's seeks an entry of default against Defendants based on their failure to answer his Complaint. However, Defendants have not been served with Plaintiff's Complaint because the Court has not yet conducted the screening required by 28 U.S.C. § 1915A.

**STANDARD OF REVIEW**

Plaintiff brings this action *in forma pauperis*. Doc. 5. Pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity or the employee of a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

The Court looks to the instructions for pleading contained in the Federal Rules of Civil Procedure when reviewing a Complaint on an application to proceed *in forma pauperis*. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . .

a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under § 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys. . . ." (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003))). However, Plaintiff's unrepresented status will not excuse mistakes regarding

procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

**DISCUSSION**

**I.      Deliberate Indifference to Serious Medical Needs**

The cruel and unusual punishment standard of the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). In the medical care context, the standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer, 511 U.S. at 828. However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Ross v. Corizon Med. Servs., 700 F. App'x 914, 916 (11th Cir. 2017) (quoting Estelle, 429 U.S. at 106).

Thus, in order to prove a deliberate indifference to medical care claim, a prisoner must: (1) "satisfy the objective component by showing that [he] had a serious medical need"; (2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and (3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). As to the first component, a medical need is serious if it "has been diagnosed by a physician as

5

mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Id.

Under the second, subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995).  Thus, the subjective component requires an inmate to prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."  Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).  "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all."  Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011).  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106.

Moreover, "[w]hen the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'"  Blanchard v. White Cty. Det. Ctr. Staff, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting Harris, 941 F.2d at 1504).  "Deliberate indifference is not established where an inmate received care but desired different modes of treatment."  Id.; Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985).  Rather, a plaintiff must show more than "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" in order to support a claim of deliberate indifference.  Melton, 841 F.3d at 1224 (quoting Harris, 941 F.2d at 1505).  Indeed, "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."  Estelle, 429 U.S. at 107.  Only "medical treatment so grossly

incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness constitutes deliberate indifference." Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) (internal quotations omitted).

Plaintiff asserts Defendants were deliberately indifferent to his serious medical needs by providing insufficient care to the injuries he obtained when he slipped and fell. Doc. 1. Plaintiff plausibly asserts a serious medical need that arose after his fall—the severe pain along his back, shoulder, and arm, down to his wrist, which remained for several months. See Loadholt v. Moore, 844 F. Supp. 2d 1274, 1279 (S.D. Ga. 2012) (severe back pain constitutes a serious medical need). However, even if Plaintiff alleges he suffered from a serious medical need, he must also allege Defendants acted with an attitude of deliberate indifference to his need. Even construing Plaintiff's allegations liberally, Plaintiff does not plausibly allege Defendants acted with deliberate indifference.

Plaintiff's claims against Defendants Dieteman, Kells, and Eady fail because immediately after he fell, the guards brought him to a room to await examination by a nurse. Although Defendant Eady's statements to Plaintiff in the waiting room may have been threatening, the fact remains Defendants promptly got a nurse to examine Plaintiff. The circumstances of his injury do not suggest anything more than pain due to landing badly on his back and arm. Furthermore, Plaintiff gives no indication that his injury was visibly obvious or suggested anything more than soreness from the fall; indeed, he states his dislocated shoulder went back into its socket once his handcuffs were removed before the nurse—who presumably could have diagnosed Plaintiff with a dislocated shoulder—arrived. These allegations fail to show that Defendants Dieteman, Kells, and Eady had subjective knowledge of a risk of serious harm and disregarded that risk. A prison official who "delay[s] the treatment of serious medical needs, even for a period of hours,"

may act with deliberate indifference.  McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).  However, Defendants immediately brought a nurse to Plaintiff.  And although that nurse did not refer Plaintiff to a doctor or recommend pain medication or other treatment, Plaintiff does not allege his examination in the waiting room significantly delayed his treatment or exacerbated his injury.  See Waldrop, 871 F.2d at 1033 (stating "a simple difference in medical opinion" does not constitute deliberate indifference).  By bringing a nurse to examine Plaintiff, Defendants did not disregard a risk of serious harm to him.  Defendants' actions were not "so cursory as to amount to no treatment at all."  McElligott, 182 F.3d at 1255.

Moreover, Plaintiff's claims against Defendant Marler, based on the quality of medical care he received, are insufficient to state a deliberate indifference claim.  Plaintiff requested further medical examination the day after his fall, and six days later, Plaintiff was seen by Defendant Marler and prescribed painkillers and an x-ray for his lower back.  However, Plaintiff wanted more than just a lower back x-ray; he wanted x-rays of his shoulder, elbow, upper back, and wrist, along with chiropractic treatment.  But the Supreme Court has explicitly stated that "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."  Estelle, 429 U.S. at 107.  Prescribing additional x-rays or chiropractic treatment is a matter of medical judgment.  Regardless, Plaintiff's caretakers still responded to his complaints by increasing his pain medication and issuing him a back brace.  This, too, demonstrates only disagreements in medical opinion rather than deliberate indifference.  See Waldrop, 871 F.2d at 1033.  And when Plaintiff still complained of pain, his doctor prescribed him muscle relaxers and a wrist brace.  At no point was Plaintiff's course of medical treatment "so cursory as to amount to no treatment at all."  See McElligott, 182 F.3d at 1255 (denying summary judgment to physician defendants who prescribed only Tylenol and Pepto-Bismol to a

prisoner plaintiff who presented with multiple cancer symptoms including extreme pain and severe weight loss over an extended period of time). Defendants, and namely Dr. Marler, exhibited responsive care to Plaintiff's ongoing pain, and such care does not violate the Eighth Amendment.

Accordingly, I **RECOMMEND** the Court **DISMISS** Plaintiff's claim for deliberate indifference against all Defendants.

## II. Motion for Entry of Default

On November 20, 2019, Plaintiff filed a premature Motion for Entry of Default, contending Defendants had failed to file a timely answer or otherwise defend as to his Complaint. Doc. 31 at 1. To be served on Defendants, Plaintiff's Complaint must survive screening under § 1915A. Because the Court had not yet conducted a frivolity review of Plaintiff's Complaint at the time Plaintiff moved for entry of default, Defendants had not been served. Thus, no responsive pleading was required. Plaintiff filed his Motion for Entry of Default prematurely. For that reason, I **DENY as premature** Plaintiff's Motion for Entry of Default.

## III. Leave to Appeal *in Forma Pauperis*

Should the Court adopt my recommendation that Plaintiff's claims be dismissed, the Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this

context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal as to any dismissed claims.

## CONCLUSION

For the above-stated reasons, I **DENY as premature** Plaintiff's Motion for Entry of Default. I also **RECOMMEND** the Court **DISMISS** Plaintiff's Complaint, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections

must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Plaintiff.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 17th day of January, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA